EDP:CWE/TBM/ANR
F. #2021R01035

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                             Docket No. 21-CR-613 (S-1) (RPK)

ANGEL ALMEIDA,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GOVERNMENT'S MEMORANDUM OF LAW IN
RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS & SEVER

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Chand Edwards-Balfour
Tara McGrath
Antoinette N. Rangel
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT BACKGROUND .......................................................................................... 1

    I.      The Offense Conduct ................................................................................ 1

    II.     The Relevant Search Warrants ................................................................. 2

         A.     The Social Media Warrant .......................................................... 2

         B.     The Premises Warrant ................................................................. 4

         C.     Electronic Devices Warrant ........................................................ 5

    III.    The Indictment ........................................................................................ 6

ARGUMENT ..................................................................................................................... 7

    I.      The Defendant Lacks Standing to Challenge the Warrants. ..................... 7

         A.     Applicable Law ........................................................................... 7

         B.     Argument .................................................................................... 8

    II.     The Warrants Are Supported by Probable Cause. .................................... 8

         A.     Applicable Law ........................................................................... 8

         B.     Argument .................................................................................... 10

    III.    The Social Media Warrant Is Sufficiently Particularized and Not
         Overbroad. ............................................................................................... 12

         A.     Applicable Law ........................................................................... 12

         B.     Argument .................................................................................... 14

    III.    Law Enforcement Relied on the Warrants in Good Faith. ....................... 15

         A.     Applicable Law ........................................................................... 15

         B.     Argument .................................................................................... 16

    IV.    The Counts Are Properly Joined. ............................................................. 16

         A.     Applicable Law ........................................................................... 16

         B.     Argument .................................................................................... 19

    V.     Bifurcation is Unwarranted. .................................................................... 22

         A.     Applicable Law ........................................................................... 22

         B.     Argument .................................................................................... 24

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

CASES                           PAGE(S)

Coolidge v. New Hampshire,
  403 U.S. 443 (1971) ......................................................................................... 12

Davis v. United States,
  564 U.S. 229, (2011) ......................................................................................... 15

Hudson v. Michigan,
  547 U.S. 586 (2006) .......................................................................................... 15

Illinois v. Gates,
  462 U.S. 213 (1983) ............................................................................................ 9

Marron v. United States,
  275 U.S. 192 (1927) .......................................................................................... 12

Old Chief v. United States,
  519 U.S. 172 (1997) ............................................................................................ 9

Rakas v. Illinois,
  439 U.S. 128 (1978) ............................................................................................ 7

Sgro v. United States,
  287 U.S. 206 (1932) ............................................................................................ 9

United States v. Abu-Jihaad,
  630 F.3d 102 (2d Cir. 2010) ............................................................................... 9

United States v. Amante,
  418 F.3d 220 (2d Cir. 2005) ....................................................................... 22, 23

United States v. Amato,
  15 F.3d 230 (2d Cir. 1994) .......................................................................... 18, 20

United States v. Awadallah,
  349 F.3d 42 (2d Cir. 2003) ............................................................................... 10

United States v. Belk,
  346 F.3d 305 (2d Cir. 2003) ............................................................................. 23

United States v. Blakney,
  941 F.2d 114 (2d Cir. 1991) ............................................................................. 19

United States v. Cadet,
  No. 08-CR-458 (NGG), 2009 WL 2959606 (E.D.N.Y. Sep. 11, 2009) ............. 21

United States v. Casamento,
  887 F.2d 1141 (2d Cir. 1989) ...................................................................... 18, 19

United States v. Chierchio,
  No. 20-CR-306 (NGG), 2022 WL 523603 (E.D.N.Y. Feb. 22, 2022) ...... 17, 18, 22

United States v. Clark,
  638 F.3d 89 (2d Cir. 2011) ......................................................... 10, 11, 12, 15

United States v. Dawkins,
  No. 17-CR-684 (ER), 2019 WL 2464924 (S.D.N.Y. May 23, 2019) ........... 13, 15

United States v. Dore,
  586 F. App'x 42 (2d Cir. 2014) .......................................................................... 7

United States v. Downing,
  297 F.3d 52 (2d Cir. 2002) ............................................................................... 22

United States v. Feyrer,
    333 F.3d 110 (2d Cir. 2003) ........................................................................ 22

United States v. Galpin,
    720 F.3d 436 (2d Cir. 2013) ........................................................................ 12

United States v. George,
    975 F.2d 72 (2d Cir. 1992) ................................................................... 14, 15

United States v. Haqq,
    278 F.3d 44 (2d Cir. 2002) ............................................................................ 7

United States v. Jones,
    16 F.3d 487 (2d Cir. 1994) ................................................................... 23, 24

United States v. Lange,
    No. 10-CR-968 (DLI), 2012 WL 511448 (E.D.N.Y. Feb. 15, 2012) ..................... 18

United States v. Leon,
    486 U.S. 897 (1984) ............................................................................... 15, 16

United States v. Lin,
    No. 15-CR-601 (S-2) (DLI), 2018 WL 5113139 (E.D.N.Y. Oct. 19, 2018) ............. 17, 18, 22

United States v. Martin,
    426 F.3d 68 (2d Cir. 2005) ............................................................................ 8

United States v. Martinez,
    No. S2 92 Cr. 839 (SWK) 1993 WL 322768 (S.D.N.Y. Aug. 19, 1993) ............................. 21

United States v. Messalas,
    No. 17-CR-339 (RRM), 2020 WL 4003604 (E.D.N.Y. July 14, 2020) .................... 14

United States v. Mouzon,
    No. 16-CR-284 (CM), 2016 WL 7188150 (S.D.N.Y. Nov. 28, 2016) ............................. 9, 10

United States v. Ortiz,
    143 F.3d 728 (2d Cir. 1998) ........................................................................ 9

United States v. Page,
    657 F.3d 126 (2d Cir. 2011) ............................................. 17, 19, 20, 23, 24, 25

United States v. Paulino,
    850 F.2d 93 (2d Cir. 1988) ........................................................................ 10

United States v. Pena,
    961 F.2d 333 (2d Cir. 1992) ........................................................................ 7

United States v. Pitre,
    960 F.2d 1112 (2d Cir. 1992) ..................................................................... 21

United States v. Pizarro,
    No. 17-CR-151 (AJN), 2018 WL 1737236 (S.D.N.Y. April 10, 2018) ..................... 17, 19

United States v. Purcell,
    967 F.3d 159 (2d Cir. 2020) ........................................................... 12, 13, 14

United States v. Riley,
    906 F.2d 841 (2d Cir. 1990) ........................................................................ 13

United States v. Rivera,
    546 F.3d 245 (2d Cir. 2008) ................................................................... 17, 18

United States v. Rosa,
    11 F.3d 315 (2d Cir. 1993) ..................................................................... 10, 11

United States v. Ruggiero,
    824 F. Supp. 379 (S.D.N.Y. 1993) ................................................................. 7

iii

United States v. Salameh,
   No. S5 93 Cr. 0180 (KTD), 1993 WL 364486 (S.D.N.Y. Sept. 15, 1993) ............................. 8
United States v. Salameh,
   152 F.3d 88 (2d Cir. 1998) ............................................................................................ 18
United States v. Sampson,
   385 F.3d 183 (2d Cir. 2004) .......................................................................................... 18
United States v. Scully,
   108 F. Supp. 3d 59 (E.D.N.Y. 2015) ....................................................................... 13, 15
United States v. Singh,
   390 F.3d 168 (2d Cir. 2004) ....................................................................................... 9, 12
United States v. Tartaglione,
   No. 16-CR-832 (KMK), 2023 WL 2237903 (S.D.N.Y. Feb. 27, 2023) ................................ 8
United States v. Tubol,
   191 F.3d 88 (2d Cir. 1999) ............................................................................................ 21
United States v. Turoff,
   853 F.2d 1037 (2d Cir. 1988) .................................................................................... 17, 18
United States v. Ulbricht,
   858 F.3d 71 (2d Cir. 2017) ........................................................................................ 12, 13
United States v. Watson,
   404 F.3d 163 (2d Cir. 2005) ............................................................................................ 8
United States v. Wagner,
   989 F.2d 69 (2d Cir. 1993) ..................................................................................... 8, 9, 10
United States v. Werner,
   620 F.2d 922 (2d Cir. 1980) .................................................................................... 17, 18
United States v. Young,
   745 F.2d 733 (2d Cir. 1984) .................................................................................... 13, 14
Zafiro v. United States,
   506 U.S. 534 (1993) ................................................................................................ 17, 22

RULES AND CONSTITUTIONAL AMENDMENTS

Fed. R. Crim. P. 8(a) ............................................................................................... 16, 17
Fed. R. Crim. P. 14(a) .................................................................................................... 18
U.S. Const. amend. IV ...................................................................................................... 8

PRELIMINARY STATEMENT

The defendant Angel Almeida's motion to suppress evidence from a search of his home and social media accounts, and to sever his trial three ways or alternatively bifurcate the felon in possession charge (the "Motion"), should be denied in its entirety.  See ECF No. 54 ("Mem. of Law").  The defendant has failed to demonstrate a privacy interest in the property searched pursuant to the challenged warrants, and, accordingly, he lacks standing to seek suppression of the fruits therefrom.  In any event, the challenged warrants were supported by probable cause, were sufficiently particularized, and were relied upon by law enforcement in good faith.  Moreover, joinder of all four counts with which he is charged is appropriate, because these charges were part of a common scheme, there is significant overlap in the evidence, and the defendant will not be substantially prejudiced.  Finally, bifurcation is unwarranted.

RELEVANT BACKGROUND[1]

I.     The Offense Conduct

The defendant was an outspoken member of "764," a neo-Nazi network that targets minor victims online, grooming and coercing them through threats, violence, blackmail and extortion to engage in destructive behavior, including producing child sexual abuse material ("CSAM") and engaging in self-mutilation, as well as violent acts against others, for the ultimate goal of destroying Western democracy.  To that end, 764 members share images of violence and CSAM with victims, to desensitize them to the harm 764 members intend to inflict.

In furtherance of the goals of 764, the defendant groomed multiple minor victims, from whom he solicited CSAM and whom he encouraged to engage in sexual acts.  For example, between July 2021 and December 2021, the defendant groomed a minor victim ("Jane Doe-1")

---

[1] Unless otherwise stated, dates and times are approximations.

1

over Facebook and Instagram, sending her CSAM and images of himself masturbating, while encouraging her to produce and share pornographic images of herself, which she did.  The defendant also encouraged her to engage in sexual conduct to make him "cum."

Similarly, between February 2020 and November 2021, the defendant groomed a second minor victim ("Jane Doe-2") over cellphone messages and in person, convincing her to produce pornographic content of herself, and to engage in sexual acts with the defendant, both of which she did.  The defendant held Jane Doe-2 at gunpoint while posing for a photograph, and he convinced Jane Doe-2 to cut her neck to allow the defendant to drink her blood.  The defendant instructed Jane Doe-2 to study 764 doctrine and to distribute CSAM to others.

Around the same time, from at least April to November 2021, the defendant possessed CSAM on multiple electronic devices, as well as animal crush videos[2] and other depictions of gore and violence, consistent with the modus operandi of 764 members.  Moreover, in November 2021, law enforcement seized a firearm—matching the appearance of the firearm held to Jane Doe-2's head—from the defendant's residence (the "Residence").

II.    The Relevant Search Warrants

A.    The Social Media Warrant

On November 18, 2021, Magistrate Judge Marcia M. Henry signed a search warrant (the "Social Media Warrant") authorizing law enforcement to search the Facebook account "Sargent Gray" (the "Sargent Account"), and the Instagram accounts "Necropedocell" (the "Necro Account") and "Stain_Lord_352" (the "Stain Account") (collectively, the "Social Media Accounts").  Ex. A at Attachment A.  The Social Media Warrant authorized the search and seizure of the Social Media Accounts for a list of evidence, fruits and instrumentalities of

---

[2] Animal crush refers to depictions of animal(s) being subject to serious injury or death.

violations of 18 U.S.C. §§ 922(g)(1), 2252A and 48 (the "Social Media Offenses") from January 1, 2021, to November 18, 2021.  See id. at Attachment B.  In support of the Social Media Warrant, FBI Special Agent ("SA") Sean Johnson submitted an affidavit (the "Social Media Affidavit") setting forth, among other things, probable cause that the Social Media Accounts would contain evidence that the defendant committed the Social Media Offenses.

The Social Media Affidavit described two tips the FBI received regarding the defendant.  First, on September 22, 2021, an individual identified by a first name ("Tipster-1") informed the FBI that the defendant (i) posted pictures of children in bondage, (ii) threatened to kill, sacrifice and rape people; (iii) had met up with a 16 year old and may have targeted other potential victims; and (iv) was a very dangerous individual.  Tipster-1 identified the Sargent Account as belonging to the defendant and stated that the defendant lived in Queens, New York. Id. ¶ 10.  Next, on October 16, 2021, an unidentified individual ("Tipster-2") informed the FBI that the defendant possessed drugs and illegal guns; posted CSAM and images of himself abusing animals and consuming drugs; and openly admitted that he wanted to engage in violent acts, including against children.  Tipser-2 identified the defendant by name, alias and age; stated that he previously lived in Ocala, Florida, had been seen in the Bronx, New York, and was believed to be living with family; and stated that he was convicted of car theft.  Id. ¶ 11.

Further, the Affidavit set forth probable cause to search each of the three Social Media Accounts.  First, the Affidavit described public portions of the Sargent Account, including a photograph posted on July 20, 2021, depicting what appears to be the defendant wearing a skull facemask (the "Skull Mask") and a bandolier of ammunition, and a photograph posted on August 13, 2021, depicting the defendant holding what appears to be a firearm and smoking what appears to be cocaine.  Id. ¶ 13.  Amazon records indicated that the defendant had purchased the

3

Skull Mask and shipped it to himself at the Residence in Queens, New York.  Id. ¶¶ 16–17.
Second, the Affidavit described public portions of the Necro Account, including photographs of
the defendant possessing what appear to be firearms, posts in which the defendant expressed an
interest in the sexual exploitation of minors and violence, and an image depicting a child gagged
and bound.  Id. ¶ 21.  Further, records demonstrated that the phone number registered to the
Necro Account (the "7241 Phone") was a phone number registered in the defendant's name.  Id.
¶¶ 18–20.  Third, the Affidavit described public portions of the Stain Account, including
photographs of the defendant posing with what appear to be firearms, photographs depicting
violence against animals, and posts threatening violence against the police.  Id. ¶ 22.  The
Affidavit also described the defendant's 2019 felony conviction.  Id. ¶ 15.

Thereafter, law enforcement seized the Social Media Accounts pursuant to the
Social Media Warrant.

B.      The Premises Warrant

On November 22, 2021, Magistrate Judge Vera M. Scanlon signed a warrant
authorizing law enforcement to search the Residence (the "Premises Warrant") and certain
electronic devices therein, and to seize evidence, fruits and instrumentalities of violations of
18 U.S.C. §§ 922(g)(1) and 48 (the "Premises Offenses").  See Ex. B at Attachments A & B.

In support of the Premises Warrant, SA Johnson submitted an affidavit (the
"Premises Affidavit") setting forth, among other things, probable cause that the Residence would
contain evidence that the defendant committed the Premises Offenses.  Like the Social Media
Affidavit, the Premises Affidavit described the tips the FBI received, the defendant's criminal
history, the purchase and shipment of the Skull Mask to the Residence, and the defendant's
connections to the Social Media Accounts.  See generally id. ¶¶ 6–31.

4

Additionally, the Premises Affidavit described physical surveillance conducted of the Residence, including observations of the defendant coming and going, and the identification of a mailbox in the lobby with an apartment number matching that of the Residence and with the label "Almeida." Id. ¶ 5. The phone number registered to the Sargent Account (the "9085 Phone") was registered in the name "Angel Olmedo" at an address close to the Residence, and had been in the vicinity of the Residence on July 20, 2021, when a photo was posted to the Sargent Account. Id. ¶¶ 14–15. The 9085 Phone was also in the vicinity of the Residence between at least November 1-3, 2021. Id. ¶ 30.

Further, the defendant's Amazon billing address was the Residence, where the Skull Mask was delivered. Id. ¶¶ 16–18. In the relevant period, the defendant used the same IP address to access his Amazon account and the Sargent Account, which IP address was registered to the Residence. Id. ¶¶ 19–20. A second IP address was used to access the Necro Account, which was also registered in the defendant's name and provided internet services to the Residence. Id. ¶ 27.

Finally, the Affidavit described recent evidence from the Stain Account evincing the Premises Offenses, including: (i) a November 9, 2021 post suggesting the defendant owned a firearm illegally, (ii) a November 12, 2021 photograph of the defendant with what appears to be a firearm, and (iii) a November 13, 2021 photograph of a bloody, maimed cat. Id. ¶ 31.

On November 23, 2021, federal agents executed a search of the Residence pursuant to the Premises Warrant and seized, among other evidence, a firearm, ammunition, numerous electronic devices including the 7241 Phone and the 9085 Phone, and the Skull Mask.

C.    Electronic Devices Warrant

In December 2021, while forensically imaging the seized electronic devices as part of standard FBI protocol for extracting electronic data, a forensic examiner saw CSAM in

5

plain sight on one of the devices.  Thereafter, law enforcement refrained from reviewing that device and all others that had not yet been digitally copied, and sought an additional warrant.  On January 4, 2022, Magistrate Judge Robert M. Levy signed a search warrant authorizing the search of the defendant's seized devices for evidence, fruits and/or instrumentalities of violations of 18 U.S.C. §§ 2251, 2252, 2252A, 2422 and 2423.  See Magistrate Docket No. 22-7.

III.    The Indictment

On December 3, 2021, a grand jury returned an indictment charging the defendant with being a felon in possession of a firearm.  See ECF No. 5.  On January 31, 2023, a grand jury returned a superseding indictment (the "Superseding Indictment") charging the defendant with being a felon in possession of a firearm and ammunition (Count One), sexual exploitation and attempted sexual exploitation of Jane Doe-1 (Count Two), Mann Act coercion and enticement and attempted coercion and enticement of Jane Doe-2 (Count Three), and possession of CSAM (Count Four).  See ECF No. 20.

ARGUMENT

As explained below, the defendant's Motion is meritless and should be denied.

I.      The Defendant Lacks Standing to Challenge the Warrants.

The defendant has not demonstrated a privacy interest in any of the property searched and accordingly lacks standing to challenge the warrants.

A.      Applicable Law

"Fourth Amendment rights are personal rights . . . [that] may not be vicariously asserted." Rakas v. Illinois, 439 U.S. 128, 133–34 (1978) (internal quotation marks and citation omitted).  "[T]o mount a successful Fourth Amendment challenge, a defendant must demonstrate that he personally has an expectation of privacy in the place searched."  United States v. Haqq, 278 F.3d 44, 47 (2d Cir. 2002) (internal quotation marks, citation and italics omitted).  "And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections."  Rakas, 439 U.S. at 134 (citations omitted).

A defendant seeking suppression bears the burden of establishing standing, United States v. Pena, 961 F.2d 333, 336 (2d Cir. 1992), namely, by "submit[ting] an affidavit from someone with personal knowledge demonstrating sufficient facts to show that he had a legally cognizable privacy interest in the searched [property] at the time of the search," United States v. Ruggiero, 824 F. Supp. 379, 391 (S.D.N.Y. 1993).  See, e.g., United States v. Dore, 586 F. App'x 42, 46 (2d Cir. 2014) (finding the defendant lacked standing to assert Fourth Amendment rights in historical cell-site records where he "did not submit an affidavit establishing that the cell phones in question belonged to him or that he had a subjective expectation of privacy in them" through another means).  "Absent such a demonstration, the defendant lacks standing to challenge the search, and, therefore, the remedy provided by the

7

exclusionary rule is unavailable." United States v. Salameh, No. S5 93 Cr. 0180 (KTD), 1993 WL 364486, at *5 (S.D.N.Y. Sept. 15, 1993) (citation omitted).

B.     Argument

The Motion was not accompanied by an affidavit from someone with personal knowledge demonstrating that the defendant had a subjective expectation of privacy in the Social Media Accounts and Residence, and accordingly he lacks standing to seek to suppress the evidence recovered pursuant to the challenged warrants.  Although the government intends to prove at trial that the Residence was the defendant's home and the Social Media Accounts belonged to him, that is insufficient to provide the defendant standing for purposes of the Motion.  See United States v. Watson, 404 F.3d 163, 166 (2d Cir. 2005) (concluding that a "defendant could not challenge the search of a residence merely because he anticipated that the [g]overnment will link the objects recovered in that search to defendant at trial"); United States v. Tartaglione, No. 16-CR-832 (KMK), 2023 WL 2237903, at *10 (S.D.N.Y. Feb. 27, 2023) ("The [g]overnment's efforts to connect a defendant to the subject of a search do not suffice to establish standing.").  The Motion to suppress the warrants, therefore, must be denied.

II.    The Warrants Are Supported by Probable Cause.

The warrants were supported by probable cause that the places to be searched would contain evidence, fruits and instrumentalities of the offenses enumerated therein.

A.     Applicable Law

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.  The probable cause determination "is not overly strict," United States v. Martin, 426 F.3d 68, 74 (2d Cir. 2005), and requires "'only the probability, and not a prima facie showing, of criminal activity,'" United States v. Wagner,

989 F.2d 69, 72 (2d Cir. 1993) (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983)).  Probable

cause depends on the "'totality-of-the-circumstances.'"  Id. at 71–72 (quoting Gates, 462 U.S. at

238).

"A showing of nexus [between the criminal activity and the thing to be searched]

does not require direct evidence and may be based on reasonable inference from the facts

presented based on common sense and experience."  United States v. Singh, 390 F.3d 168, 182

(2d Cir. 2004) (internal quotation marks omitted).  Moreover, the government need not establish

that the place to be searched will contain "smoking gun," or direct, evidence of the identified

crimes.  See United States v. Abu-Jihaad, 630 F.3d 102, 132 (2d Cir. 2010) (explaining, in

context of the more exacting standard for admission of evidence under Rule 401, that to be

relevant "evidence need not be sufficient by itself to prove a fact in issue, much less to prove it

beyond a reasonable doubt"); see also Old Chief v. United States, 519 U.S. 172, 179 (1997)

("The fact to which the evidence is directed need not be in dispute.").

The proof offered must be of facts sufficiently close in time to the issuance of the

warrant to justify a finding of probable cause at that time.  Sgro v. United States, 287 U.S. 206,

210–11 (1932).  "Two critical factors in determining whether facts supporting a search warrant

are stale are the age of those facts and the nature of the conduct alleged to have violated the law."

United States v. Ortiz, 143 F.3d 728, 732 (2d Cir. 1998) (internal quotation marks and citation

omitted).  "The length of the criminal activity is another factor that is given consideration."

Singh, 390 F.3d at 182.  "[W]hen the supporting facts present a picture of continuing conduct or

an ongoing activity, the passage of time between the last described act and the presentation of the

application becomes less significant."  Ortiz, 143 F.3d at 732 (internal quotation marks, citation

and alteration omitted); see United States v. Mouzon, No. 16-CR-284 (CM), 2016 WL 7188150,

at *6 (S.D.N.Y. Nov. 28, 2016) ("[I]nformation about past criminal activity that by itself might

be stale 'can be sufficient if the affidavit also establishes a pattern of continuing criminal activity

so there is reason to believe that the cited activity was probably not a one-time occurrence.'"

(quoting Wagner, 989 F.2d at 75)).

 "Ordinarily, a search or seizure pursuant to a warrant is presumed valid." United

States v. Awadallah, 349 F.3d 42, 64 (2d Cir. 2003). "[C]onsiderable deference" should be

accorded "to the probable cause determination of the issuing magistrate." United States v. Clark,

638 F.3d 89, 93 (2d Cir. 2011) (internal quotation marks and citation omitted). The movant

bears the burden of establishing a Fourth Amendment violation, United States v. Paulino, 850

F.2d 93, 96 (2d Cir. 1988), and "doubts should be resolved in favor of upholding the warrant,"

United States v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993) (internal quotation marks and citation

omitted).

 B. <u>Argument</u>

 The defendant argues that neither the Social Media Warrant nor the Premises

Warrant were supported by probable cause to believe that the places to be searched would

contain evidence of crimes, and that evidence in support of the Premises Warrant was stale. See

Mem. of Law at 5–6, 11–13. Both arguments easily fail.

 First, no credible argument can be made that the Social Media Affidavit failed to

establish probable cause that the Social Media Accounts would contain evidence of the Social

Media Offenses. The Affidavit described public portions of the Social Media Accounts: all three

accounts included photographs of the defendant posing with what appear to be firearms; the

Necro Account included a photograph of a child gagged and bound, and discussed the

defendant's interest in the sexual exploitation of minors; and the Stain Account included images

depicting violence against animals. See Ex. A ¶¶ 16–22. The Affidavit further described the

defendant's criminal history, id. ¶ 15, and two detailed tips provided to the FBI revealing that the defendant posted images of child abuse and messages openly describing his violence, id. ¶¶ 10–11.  Those facts more than established probable cause, of which the issuing judge concurred. See Clark, 639 F.3d at 93 (reviewing court should accord "considerable deference" to probable cause determination of issuing judge).

Second and similarly, the Premises Affidavit plainly established probable cause to believe evidence of the Premises Offenses would be found at the Residence.  It described, among other things, that the defendant was surveilled entering and exiting the Residence; a mailbox in the lobby of the building, bearing a number matching the number of the Residence, listed "Almeida"; and the defendant's Amazon billing address was the Residence.  See Ex. B ¶¶ 5, 16. Further, the defendant shipped the Skull Mask—which he was thereafter photographed wearing together with a bandolier of ammunition—to the Residence.  Id. ¶¶ 11, 16–18.  And IP addresses used to access the Sargent Account and Necro Account—on which the defendant posted, among other things, images of firearms, see id. ¶¶ 11, 23—provided internet to the Residence, id. ¶¶ 19-20, 27.[3]

Further, there is no staleness issue here.  The Premises Affidavit described two tips to the FBI from September 22, 2021 and October 16, 2021—the latter being just one month prior to the issuance of the Premises Warrant.  See Ex. B ¶¶ 7–8.  Moreover, the Affidavit detailed the defendant's posts on the Stain Account depicting himself with firearms and of animal gore on November 9, 12 and 13, 2021—just days before the issuance of the Premises

---

[3]  Moreover, the Premises Affidavit included screenshots of several photographs posted to the Social Media Accounts in which the defendant posed with firearms, which photographs were plainly taken inside, and which appear to have been taken inside a residence.  See, e.g., Ex. B ¶¶ 23(b) (depicting defendant posing with a firearm in front of a doorway), 31(e) (depicting defendant holding a firearm, with faucet and bathtub visible in the background).

Warrant.  Id. ¶ 31.  In any event, given "the continuous and protracted nature" of the defendant's criminal conduct—persistently disseminating gore and violence in the name of 764—any "passage of time between the last described act and the presentation of evidence becomes less significant."  Singh, 390 F.3d at 181–82 (rejecting staleness claim despite twenty-month lapse between the date of the last fact establishing probable cause and the issuance of the premises warrant).

Because both warrants were supported by probable cause, the Motion must be denied.

III.    The Social Media Warrant Is Sufficiently Particularized and Not Overbroad.

The Social Media Warrant particularly described the places to be searched and the things to be seized relating to the Social Media Offenses.

A.    Applicable Law

The Fourth Amendment's particularity requirement "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another," Marron v. United States, 275 U.S. 192, 196 (1927), by foreclosing a "general, exploratory rummaging in a person's belongings," Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971).  To satisfy the particularity requirement, warrants must specify (1) the offenses for which probable cause has been established; (2) the place or thing to be searched; and (3) the items to be seized relating to the specified offenses.  United States v. Galpin, 720 F.3d 436, 445–46 (2d Cir. 2013); United States v. Purcell, 967 F.3d 159, 178 (2d Cir. 2020).

"[B]readth and particularity are related but distinct concepts."  United States v. Ulbricht, 858 F.3d 71, 102 (2d Cir. 2017).  "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based."  Galpin, 720 F.3d at 446 (internal quotation marks omitted).

"Nevertheless, 'in many cases, the volume of records properly subject to seizure because of their evidentiary value may be vast.'" Purcell, 967 F.3d at 179 (quoting Ulbricht, 858 F.3d at 100). The Second Circuit "has found, for example, that 'a broad warrant allowing the government to search [a defendant's] laptop for potentially extensive evidence of' charged crimes committed using that laptop 'does not offend the Fourth Amendment, as long as that warrant meets the three particularity criteria.'" Id. (quoting Ulbricht, 858 F.3d at 100). See United States v. Dawkins, No. 17-CR-684 (ER), 2019 WL 2464924, at *7 (S.D.N.Y. May 23, 2019) (rejecting challenge to search warrants that "allowed law enforcement agents to review the full contents of the [seized] phones" because the warrants "described the target crimes, identified the phones as the items to be searched, and specified the types of data that would be seized from the phones"); United States v. Scully, 108 F. Supp. 3d 59, 89–95 (E.D.N.Y. 2015) (rejecting challenge to search warrants that allowed search of entire content of email accounts in order to review and identify for seizure evidence of specified crimes).

Accordingly, a defendant must do more than simply allege the warrant contained "broadly worded categories of items available for seizure." See United States v. Riley, 906 F.2d 841, 844 (2d Cir. 1990). "Once a category of seizable papers has been adequately described, with the description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category." Id. at 843–45 (upholding warrant that authorized a search for "records and other items that constitute evidence of the offenses of conspiracy to distribute controlled substances and distribution of the same"); see United States v. Young, 745 F.2d 733, 759–60 (2d Cir. 1984) ("[U]se of the term 'other evidence' following the term 'money' was sufficient to permit the agents to seize such

manifestations of wealth as furs, jewelry, and expensive automobiles."); United States v. George, 975 F.2d 72, 76 (2d Cir. 1992) (collecting similar cases).

     B.    Argument

        The Social Media Warrant was neither insufficiently particularized nor overbroad. First, the Warrant authorized a search for fruits, evidence and instrumentalities of enumerated offenses: the Social Media Offenses. See Ex. A at Attachment B. Second, the Warrant described the property to be searched: the Social Media Accounts. See id. at Attachment A. Third, the Warrant specified the items to be seized—those furnishing evidence of the Social Media Offenses—using an illustrative list. See id. at Attachment B. No greater particularity was necessary. See Purcell, 967 F.3d at 178.

        Moreover, the Warrant was not overbroad. It described, in Attachment B-I, the records to be disclosed by the provider, and in Attachment B-II, the evidence to be seized, by reference to the Social Media Offenses and the use of a detailed, ten-point illustrative list. See Ex. A at Attachment B. This is "sufficiently specific to permit the rational exercise of judgment in selecting what items to seize," and is a type of search warrant that "courts in this Circuit have routinely upheld." United States v. Messalas, No. 17-CR-339 (RRM), 2020 WL 4003604, at *5 (E.D.N.Y. July 14, 2020). And the Social Media Affidavit provided ample probable cause to believe the targeted records would furnish evidence of the Social Media Offenses, as detailed above.

        Although the defendant complains that Attachment B-I permitted disclosure of a broad array of data, see Mem. of Law at 14, the Social Media Affidavit detailed the many ways in which that data may furnish evidence of crime, see Ex A. ¶¶ 59–67, and law enforcement's seizure of evidence was in any event limited by reference to the Social Media Offenses. Courts have routinely recognized that in the context of electronic evidence, it is reasonable under the

Fourth Amendment for a warrant to authorize agents to conduct a broad search of all data on a device or in an electronic account to identify and seize specified types of evidence of specified crimes.  See, e.g., Dawkins, 2019 WL 2464924, at *7 (rejecting challenge to warrant authorizing review of full content of seized phones); Scully, 108 F. Supp. 3d at 89–95 (rejecting challenge to warrant authorizing search of entire email accounts).  Accordingly, the Motion should be denied.

III.   Law Enforcement Relied on the Warrants in Good Faith.

Even assuming the challenged warrants were defective (they were not), the good faith exception applies.

A.   Applicable Law

Suppression is the court's "last resort, not [its] first impulse."  Hudson v. Michigan, 547 U.S. 586, 591 (2006).  "The rule's sole purpose . . . is to deter future Fourth Amendment violations."  Davis v. United States, 564 U.S. 229, 236–37, (2011).  Thus, even where probable cause is lacking or a warrant is overbroad, suppression will rarely be the appropriate remedy.  "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance" on an invalidated warrant.  United States v. George, 975 F.2d 72, 77 (2d Cir. 1992).  Nonetheless, "the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within the" good faith exception.  Clark, 638 F.3d at 100 (citing United States v. Leon, 468 U.S. 897, 922 (1984)).

Suppression may be proper where (1) "the magistrate . . . was misled by information . . . that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "the issuing magistrate wholly abandoned his judicial role," such that "no reasonably well trained officer should rely on the warrant"; (3) the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "facially deficient," for example, it "fail[s] to particularize

the place to be searched or the things to be seized." Leon, 468 U.S. at 923 (internal quotation marks and citations omitted).

      B.    <u>Argument</u>

It was reasonable for law enforcement agents to rely on both the Social Media Warrant and the Premises Warrant after they were signed and authorized by the issuing magistrate judges. With respect to the first two prongs of <u>Leon</u>, the defendant concedes that the issuing judges were neither misled by the affiant, nor did they abandon their judicial roles. <u>See</u> Mem. of Law at 15, 17. Despite the defendant's arguments to the contrary, the latter two prongs of <u>Leon</u> are also satisfied. For all the reasons stated above, the Social Medial Affidavit and Premises Affidavit supplied ample probable cause—describing numerous Social Media posts, subpoenaed records and FBI tips, among other things. Moreover, there can be no credible argument the warrants were facially deficient—they specified the places to be searched and the things to be seized. <u>See</u> Ex. A at Attachments A & B; Ex. B at Attachments A & B. In these circumstances, suppression is a wholly unwarranted remedy.

## IV.    The Counts Are Properly Joined.

Joinder of all four counts in the Superseding Indictment is appropriate, because they constitute part of a common scheme, there is significant overlap in evidence, and the defendant will not be unfairly prejudiced by facing all charges in a single trial.

      A.    <u>Applicable Law</u>

Federal Rule of Criminal Procedure ("Rule") 8(a) provides for joinder of offenses against a single defendant in three circumstances:

> [O]ffenses may be joined in a similar indictment when they are (1) "based on the same act or transaction," or (2) based "on two or more acts or transactions connected together or constituting parts of a common scheme or plan," or (3) "of the same or similar character."

United States v. Turoff, 853 F.2d 1037, 1042 (2d Cir. 1988) (quoting Fed. R. Crim. P. 8(a)).

Rule 8(a) does not require "too precise an identity between the character of the offenses."

United States v. Werner, 620 F.2d 922, 926 (2d Cir. 1980).  "The Second Circuit has stressed

that Rule 8(a) joinder 'is not limited to crimes of the "same" character but also covers those of

"similar" character.'"  United States v. Lin, No. 15-CR-601 (S-2) (DLI), 2018 WL 5113139, at *

2 (E.D.N.Y. Oct. 19, 2018) (quoting Werner, 620 F.2d at 926)); see United States v. Pizarro, No.

17-CR-151 (AJN), 2018 WL 1737236, at *3 (S.D.N.Y. April 10, 2018) ("[F]or the purposes of

Rule 8(a)'s liberal standard, 'similar charges include those that are somewhat alike, or those

having a general likeness to each other.'" (quoting United States v. Rivera, 546 F.3d 245, 253

(2d Cir. 2008)).  Moreover, "[j]oinder is proper where the same evidence may be used to prove

each count, or if the counts have a sufficient logical connection."  United States v. Page, 657

F.3d 126, 129 (2d Cir. 2011) (internal quotation marks and citations omitted) (upholding joinder

of narcotics charge and firearm charge where narcotics and firearm were seized from the same

room); see Lin, 2018 WL 5113139, at * 2 ("Courts also have found joinder proper for distinct

criminal acts where they originated from a common scheme.").

   "Each of these tests for when offenses may be tried together reflects a policy

determination that gains in trial efficiency outweigh the recognized prejudice that accrues to the

accused."  Turoff, 853 F.2d at 1042 .  Put differently, "[j]oinder is permitted by Rule 8 for

reasons of judicial efficiency, consistency of verdicts, witness and government convenience, and

speedy trials."  United States v. Chierchio, No. 20-CR-306 (NGG), 2022 WL 523603, at *1

(E.D.N.Y. Feb. 22, 2022) (citing Zafiro v. United States, 506 U.S. 534, 537 (1993)).  Courts

evaluating challenges under Rule 8(a) apply a "looser" standard, in lieu of the more "restrictive

standard" of Rule 8(b), which governs joinder of multiple defendants.  Id.

Notwithstanding proper joinder under Rule 8(a), a court may nevertheless sever charges pursuant to Rule 14 if joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). "[T]he defendant must show not simply some prejudice, but <u>substantial</u> prejudice," <u>United States v. Sampson</u>, 385 F.3d 183, 190 (2d Cir. 2004) (internal quotation marks and citation omitted), which means "prejudice so great as to deny [the defendant] a fair trial," <u>United States v. Salameh</u>, 152 F.3d 88, 115 (2d Cir. 1998) (internal quotation marks and citation omitted). "Given the balance struck by Rule 8, which 'authorizes some prejudice' against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in 'substantial prejudice.'" <u>United States v. Amato</u>, 15 F.3d 230, 237 (2d Cir. 1994) (quoting <u>Turoff</u>, 853 F.2d at 1043).

A "generalized claim of prejudice" based on the alleged "cumulative effect of evidence relating to distinct offenses" fails to satisfy the defendant's heavy burden. <u>United States v. Rivera</u>, 546 F.3d 245, 254 (2d Cir. 2008); <u>see</u> <u>United States v. Lange</u>, No. 10-CR-968 (DLI), 2012 WL 511448, at *4 (E.D.N.Y. Feb. 15, 2012) ("Generalized concerns of 'spillover' prejudice or concerns that the jury would be influenced by the cumulative effect of evidence are insufficient[.]"). "Granting separate trials under Rule 14 simply on a showing of some adverse effect, particularly solely the adverse effect of being tried for two crimes rather than one, would reject the balance struck in Rule 8(a), since this type of 'prejudice' will exist in any Rule 8(a) case." <u>Werner</u>, 620 F.2d at 929.

Severance is an "extreme remedy . . . to be avoided where the court may reduce the risk of prejudice through other less dramatic means, like limiting instructions." <u>Chierchio</u>, 2022 WL 523603, at *2 (internal brackets, quotation marks and citation omitted). A decision to sever under Rule 14 lies within the Court's "sound discretion," <u>United States v. Casamento</u>, 887

18

F.2d 1141, 1149 (2d Cir. 1989), and "will not be overturned unless the defendant demonstrates that the failure to sever caused him substantial prejudice in the form of a miscarriage of justice," United States v. Blakney, 941 F.2d 114, 116 (2d Cir. 1991) (internal quotation marks and citation omitted).

    B.    <u>Argument</u>

Joinder of all four counts is appropriate, because they were part of a common scheme, they will be proven by much of the same evidence, and the defendant will not be substantially prejudiced by facing the counts in a single trial. Accordingly, the Court should deny the defendant's request to conduct three separate trials: one on being a felon in possession of a firearm (Count One), one on possessing CSAM (Count Four), and one on exploiting Jane Doe-1 and Jane Doe-2 (Counts Two and Three). <u>See</u> Mem. of Law at 17, 21.

First, the defendant committed each of the charged crimes as part of a common scheme—namely, in furtherance of the goals of 764, of which he was a devoted and outspoken member. The defendant attempted to incite and spread violence—sharing images of himself brandishing a firearm, of children being bound and raped, and of animals being stabbed and beaten. He targeted minors online, including Jane Doe-1 and Jane Doe-2, desensitizing them to violence by distributing CSAM and, in the case of Jane Doe-2, inundating her with 764 doctrine. And he coerced these victims into producing pornographic content of themselves. With Jane Doe-2, the defendant's coercion went so far as to hold her at gunpoint, drink her blood and engage in criminal sexual acts. Given the common scheme and intertwined nature of the crimes, joinder here satisfies Rule 8(a)'s "liberal" standard. <u>See</u> <u>Pizarro</u>, 2018 WL 1737236, at *3 ; <u>see also</u> <u>Page</u>, 657 F.3d at 129 (finding joinder appropriate where counts have a "sufficient logical connection" (internal quotation marks and citation omitted)).

Second, there is a significant overlap in the evidence that will be used to prove the defendant's crimes, all of which occurred during the course of less than two years.  For example, the government expects that a trial on any of the four counts will involve testimony from Jane Doe-2 that the defendant coerced her into producing pornographic content of herself and engaging in criminal sex acts, including by holding her at gunpoint and sending her CSAM. That testimony is as relevant to a trial on the felon in possession count—to establish that the defendant possessed a gun and his motive for doing so—as it is to a trial on the child exploitation counts—to establish the defendant's method of coercion.  The same is true of the firearm itself and the image of Jane Doe-2 being held at gunpoint.  Much of the evidence in the case stems from the search of the defendant's Residence and the subsequent search of the electronic devices seized therein—including the firearm, photographs of the firearm, CSAM, and produced pornographic content of Jane Doe-1 and Jane Doe-2.  Accordingly, the government expects that a trial on any of the four counts will involve testimony concerning the searches of the Residence and the electronic devices.  See Page, 657 F.3d at 129 (finding joinder appropriate "where the same evidence may be used to prove each count" (internal quotation marks and citation omitted)); see Amato, 15 F.3d at 236–37 (finding joinder of felon in possession charge with racketeering and loansharking charges appropriate where defendant's organized crime ties admissible to demonstrate motive and knowledge of firearm possession).  The substantial overlap in the narratives and evidence not only demonstrates the logical connection between the counts, it also furthers Rule 8's goals of judicial efficiency—which ensures witnesses, including

20

child sexual abuse victims, are not forced to testify multiple times—while minimizing any risk of prejudice to the defendant.[4]

Nor is severance appropriate under Rule 14, as the defendant has alleged little more than generalized concerns of "spillover" prejudice.  See Rivera, 546 F.3d at 254; Lin, 2018 WL 5113139, at *3 ("Generalized concerns of 'spillover' prejudice are insufficient to demonstrate the level of prejudice necessary for a defendant to prevail on a Rule 14 motion."). The defendant simply asserts that "jurors will associate firearms with violence and danger" and that "child pornography and exploitation are especially upsetting allegations."  See Mem. of Law at 18.  Yet, the substantial overlap in evidence undermines the defendant's claim of prejudice, and further demonstrates the appropriateness of joinder to avoid inefficient use of Court and government resources that would result from conducting three separate trials.  Moreover, even if the Court determines that portions of the government's proof are admissible as to only one count, any "spillover" prejudice would be minimal, as the government is not seeking to admit bad acts that are any more "sensational or disturbing" than the charged conduct.  United States v. Cadet, No. 08-CR-458 (NGG), 2009 WL 2959606, at *4 (E.D.N.Y. Sep. 11, 2009) (quoting United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992)).

---

[4] The cases cited by the defendant in fact support joinder.  See Mem. of Law at 16.  In United States v. Tubol, joinder of fundamentally distinct robbery offenses was improper, but joinder of a firearm charge with either of the robbery charges was proper where eyewitnesses would testify that the perpetrator of both robberies carried a gun.  191 F.3d 88, 94–95 (2d Cir. 1999).  Similarly, in United States v. Martinez, a narcotics charge was properly joined with a bail-jumping charge, because the former arguably motivated the conduct resulting in the latter, but further joinder of a firearm charge was improper where the firearm was possessed months after the narcotics conspiracy ended and had no causal link to the narcotics.  No. S2 92 Cr. 839 (SWK), 1993 WL 322768, at *8–10 (S.D.N.Y. Aug. 19, 1993).  Here, each of the charges is part of a common scheme, occurred in approximately the same time period, and will be proven with many of the same witnesses and evidence.

Finally, the defendant's misplaced concerns of prejudice can be addressed by a limiting instruction to the jury to consider each charge separately, and to only consider evidence relevant to the respective charges. United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003) (noting that even where the risk of prejudice is high, "less drastic measures—such as limiting instructions—often suffice as an alternative to granting a Rule 14 severance motion"); Lin, 2018 WL 5113139, at *3 ("The Court finds that limiting instructions would be sufficient to address any purported prejudice, and, therefore, severance is unnecessary."). Contrary to the defendant's assertion, see Mem. of Law at 20, there is no reason to believe that reasonable jurors would disregard such an instruction, see Zafiro, 506 U.S. at 540–41 (noting jurors are presumed to follow instructions); United States v. Downing, 297 F.3d 52, 59–60 (2d Cir. 2002) (same). In short, joinder is proper, and the defendant cannot demonstrate substantial prejudice as to warrant the "extreme remedy" of severance. See Chierchio, 2022 WL 523603, at *2.

V.      Bifurcation is Unwarranted.

Bifurcation of the felon in possession charge is unnecessary because a limiting instruction can appropriately mitigate any prejudice the defendant might suffer.

A.      Applicable Law

As an alternative to severance, a district court may bifurcate the elements of a felon in possession charge to prevent the jury from learning about the defendant's prior felony before assessing the other charges. The Second Circuit has cautioned, however, that bifurcation "can confuse the jurors and unfairly prejudice the government because the jurors are being asked to deliberate about facts that they most likely would not consider to be a crime: simply possessing a firearm or ammunition." United States v. Amante, 418 F.3d 220, 225 (2d Cir. 2005). Moreover, because the fact of the prior felony in the context of a § 922(g)(1) case, "when accompanied by a proper curative instruction . . . is by definition not prejudicial, a district court

22

cannot err by failing to take additional measures such as bifurcation, intended to mitigate any asserted prejudice." United States v. Belk, 346 F.3d 305, 310 (2d Cir. 2003) (discussing single-count felon in possession case).

"[I]n a multi-count trial, a decision to bifurcate a felon in possession charge in its entirety from other charges (or severance or 'some other effective ameliorative procedure') may be appropriate in certain circumstances." Amante, 418 F.3d at 244 n.2 (quoting United States v. Jones, 16 F.3d 487, 492–93 (2d Cir. 1994)). For example, bifurcation may be appropriate where "the district court determines that a limiting instruction cannot adequately protect the defendant from substantial prejudice." Page, 657 F.3d at 132. In United States v. Jones, the defendant faced substantial prejudice requiring bifurcation where the defendant's first trial on bank robbery charges ended in a hung jury, and the prosecution added a felon in possession charge in advance of the second trial "solely to buttress its case on the other counts." 16 F.3d at 492–93 (finding, additionally, that the counts suffered from "retroactive misjoinder"). In other words, bifurcation was required because the prosecution had added a firearm charge simply "to strengthen weaker counts that the government had earlier been unable to prove." Page, 657 F.3d at 132.

By contrast, in United States v. Page, the Second Circuit found the district court did not abuse its discretion in neither severing nor bifurcating a felon in possession charge from narcotics charges. See id. at 130. First, there was a "sufficient logical connection" between the counts, namely, the drugs and gun both belonged to the defendant, were stored in the same bedroom, and the gun could be seen as a "tool" of the narcotics trade. Id. Second, the counts were proven with much of the same evidence, such as testimony concerning the premises search wherein the contraband was found and the relationship between the defendant and a cooperating witness. Id. Finally, the district court took appropriate precautionary measures—the fact of the

defendant's prior felony conviction was entered through a stipulation and the court twice provided a limiting instruction.  Id. at 130–31.  The court found that unlike in Jones, the gun charge was added not to bolster weaker charges but simply "to reflect the full scope of [the defendant's] criminal conduct."  Id. at 132.

B.      Argument

The fact of the defendant's prior conviction will not substantially prejudice him, particularly in the face of less drastic protective measures available to the Court, and accordingly bifurcation is unnecessary.

As an initial matter, to the extent the defendant agrees, at trial the government will introduce the fact of the defendant's prior conviction by stipulation.  Otherwise, the government will prove the defendant's 2019 felony conviction through redacted certified court records.  The government does not intend to introduce further evidence of the defendant's criminal history unless the defendant testifies.  In these circumstances, any prejudice resulting from the defendant's sanitized criminal history can appropriately be addressed by a limiting instruction.  This is particularly true where the fact of the defendant's prior conviction is significantly less sensational than the conduct underlying the instant crimes, which include holding a child at gunpoint.

Jones, cited by the defendant, is easily distinguishable.  See Mem. of Law at 20.  There, after a mistrial, the prosecution added a firearm charge "solely to buttress its case" on the bank robbery charges.  See Jones, 16 F.3d at 492–93.  No such claim can be made here.  Here, the defendant was first indicted for being a felon in possession of a firearm, and only thereafter indicted on charges involving child exploitation, all of which "were included to reflect the full scope of [the defendant's] criminal conduct."  See Page, 657 F.3d at 132.  And as explained above, there is a "sufficient logical connection" between the counts, which will be proven with

24

much of the same evidence, undermining the defendant's claims of prejudice and demonstrating the sufficiency of a limiting instruction.  See id. at 130–31 (finding neither bifurcation nor severance required in those circumstances).  Thus, as in Page, bifurcation is unnecessary.

CONCLUSION

For the reasons set forth above, the defendant's Motion is without merit and should be denied in its entirety.

Dated:      Brooklyn, New York
            October 16, 2023

Respectfully submitted,

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York

By:     /s/                                           
        Chand Edwards-Balfour
        Tara McGrath
        Antoinette N. Rangel
        Assistant United States Attorneys
        (718) 254-7000