LAW OFFICE OF ANTHONY CECUTTI
217 Broadway, Suite 707
New York, New York 10007
Phone: (212) 619-3730
Cell: (917) 741-1837
Fax: (212) 962-5037
anthonycecutti@gmail.com

October 18, 2024

**TO BE FILED UNDER PARTIAL SEAL**

**BY ECF**
The Honorable Rachel P. Kovner
United States District Court Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

**Re: United States v. Angel Almeida; 21 Cr. 613 (RPK)**

Dear Judge Kovner:

As the Court is aware, I represent Angel Almeida[1] in the above-referenced matter, having been appointed pursuant to the provisions of the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.

I respectfully submit this response pursuant to the Court's Order, dated October 11, 2024, asking whether the government's failure to hospitalize the defendant for treatment since the Court's Order of May 20, 2024, is consistent with (i) 18 U.S.C. § 4241(d)(1) and (ii) this Court's Order, and if not, the appropriate remedy for any violation. For the reasons set forth below, the Court should find that the government has violated Angel's due process rights, and order that Angel be hospitalized to an appropriate facility within 15 days. Should the government fail to comply, the Court should order a hearing to determine whether the government's continued violation of Angel's due process rights warrants a dismissal of the indictment.

**Background**

Almost five months ago, on May 20, 2024, this Court found, by a preponderance of the evidence, that Angel "is presently suffering from a mental disease or defect rendering [them] mentally incompetent." There was no hearing or objection to this finding. Pursuant to 18 U.S.C. § 4241, the Court committed Angel to the custody of the Attorney General and ordered that "the Bureau of Prisons ("BOP") hospitalize [Angel] for treatment in a suitable facility for a period not to exceed four months, as is necessary to determine whether

---

[1] Angel Almeida preferred pronouns are they/their/them.

there is a substantial probability that in the foreseeable future [Angel] will attain the capacity to permit the proceedings to go forward." *See* Order, dated May 20, 2024.



And "given the 'waitlist,'" Angel cannot presently be transferred. *See* Gov't Ltr, dated October 9, 2024. No projected transfer date has been provided by the government. As such, it is unknown when Angel will even be evaluated and begin treatment. Their pre-hospitalization confinement is indefinite.

By way of the government's most recent status report, the BOP cannot comply with the Court's § 4241(d) Order because of the "waitlist." This suggests that the BOP does not have enough beds, staff or resources. Accordingly, the BOP is asking this Court to excuse its violation of Angel's constitutional rights, and that Angel - who is profoundly mentally ill - should instead, while confined under harsh and brutal conditions, bear the full weight of the Attorney General's unwillingness or inability to transfer them and provide them with needed and critical mental health treatment. This is wrong and unacceptable. And the now five-month delay in transferring Angel is unconscionable and unconstitutional.

## Argument

I. **The now 5-month delay in complying with the Court's § 4241(d) order to promptly transfer Angel to a federal medical center violates 18 U.S.C. § 4241(d)(1) and their due process rights under the Fifth Amendment**

   A. **The purpose of § 4241(d) was to avoid the constitutional concerns posed by the indefinite incarceration of mentally incompetent people by setting strict time limits for the government to conduct a competency restoration evaluation.**

In *Jackson v. Indiana*, 406 U.S. 715 (1972), the Supreme Court held that state statutes that allowed for the indefinite commitment of a criminal defendant solely on account of incompetency violated the guarantee of due process. "At the least," the Court wrote, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson*, 406 U.S. at 738. In reviewing the federal statute governing competency-restoration

determinations – that is, the predecessor of 18 U.S.C. § 4241(d) – the Court explained that to withstand constitutional scrutiny, the statute, which contained no defined limits on how long a defendant could be held before determining whether competency could be restored, was governed by a "rule of reasonableness," under which a defendant could "be held only for a 'reasonable period of time' necessary to determine whether there is a substantial chance of attaining the capacity to stand trial in the foreseeable future." *Jackson*, 406 U.S. at 733.

In response to the due process concerns identified in *Jackson*, Congress enacted § 4241(d). *See United States v. Magassouba*, 544 F.3d 387, 403 (2d Cir. 2008); *see also United States v. Donnelly*, 41 F.4th 1102, 1105 (9th Cir, 2022).

The statute provides, in pertinent part, that where a court finds:

> that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
>
> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward. . . .

18 U.S.C. § 4241(d).

The statute thus specified four months as the outside limit for the government to determine whether there was a substantial likelihood that a person's competency could be restored.

There is a split amongst courts as to whether this four-month period includes pre-hospitalization confinement, or whether the statute contemplates some additional reasonable period of time for the government to transfer a defendant to an appropriate facility. Regardless of which way a court comes out on this issue, the excessive pre-hospitalization confinement suffered by Angel violates § 4241(d) and the Constitution.

> **B.     The now 5-month period of pre-hospitalization confinement violates either the express four-month limitation set forth in § 4241(d), or the implicit constraints imposed by the due process clause.**

The most coherent reading of §4241(d), in light of the statute's purpose to set strict limits on the length of time a defendant can be held for a restoration evaluation, is that the four-month period for an initial restoration evaluation begins when the Court commits a

3

defendant to the custody of the Attorney General for that purpose. *See United States v. Carter*, 583 F. Supp. 3d 94, 100 (D.D.C. 2022) ("the plain text of § 4241(d)(1) provides that the government 'shall hospitalize' an incompetent defendant as soon as the government obtains 'custody' over him. . . . Accordingly, to the degree that § 4241(d)(1) allows the government to delay defendants' transportation, those delays must be a part of the 'reasonable period of time, not to exceed four months.' (quoting 18 U.S.C. § 4241(d)); *see also United States v. Donnelly*, 41 F. 4th 1102, 1108 (9th Cir. 2022) (Watford, J. concurring); *United States v. Sergio Emerson*, 22 Cr. 96 (WCG), Dkt. No. 18 (E.D. Wis. Mar. 13, 2023) ("By failing to place Emerson in a suitable facility within the four-month commitment period, the Attorney General has failed to comply with 18 U.S.C. § 4241(d)(1).").

      As Judge Watford explained:

> Nothing in the text of § 4241(d) suggests that Congress envisioned the creation of two separate time periods, the first a period of pre-hospitalization subject to no statutory time constraints whatsoever, to be followed by a period of hospitalization subject to a strict four- month time constraint. The statute simply provides that upon finding the defendant not competent to stand trial, a district court "shall commit" the defendant to the custody of the Attorney General. In the same breath, the statute states that the Attorney General "shall hospitalize" the defendant for treatment and evaluation for a reasonable period of time not to exceed four months. The provision is most sensibly read as imposing an outside time limit on the entire period of commitment, from issuance of the court's commitment order to completion of the defendant's period of hospitalization.

*Donnelly*, 41 F. 4th at 1108 (Watford, J. concurring).[2]

      But even if the Court concludes that the four-month period set forth in § 4241(d)(1) does not include pre-hospitalization delay, Congress's specification of four months as the outer limit for conducting the initial restoration evaluation is an important benchmark in determining the permissible length of pre-hospitalization confinement.

      As an initial matter, there should be no dispute that – even if the Court finds that the four- month statutory period does not begin until Angel is hospitalized – the due process clause places some limitation on the length of time the Attorney General can hold someone in pre-hospitalization confinement after the Court issued its § 4241(d) order: "Although Congress did not provide a specific time limit for a pre-hospitalization commitment period,

---

[2] In *Magassouba*, the Second Circuit explained that § 4241(d)(1) imposes a four-month limit "only on the Attorney General's authority to hold an incompetent defendant in custodial hospitalization for the purpose of determining the probability of his regaining competency." *See* 544 F. 3d at 408. At issue in *Magassouba* however, was not pre-hospitalization confinement, but whether that four-month period included the period under which a district court could order an additional period of hospitalization under § 4241(d)(2). *Id. Magassouba* thus does not bind this Court's determination as to when the four-month evaluation period begins.

4

*Jackson* requires the duration of any such commitment 'to bear some reasonable relation' to its purpose." *Donnelly*, 41 F. 4th at 1106 (quoting *Jackson*, 406 U.S. at 738); *see also Magassouba*, 544 F. 3d at 403 (In *Jackson*, "the Supreme Court itself ruled that such a reasonableness requirement was mandated by due process."). Given the clear purpose of the statute to limit the amount of time an incompetent defendant could be held for restoration evaluation, Congress could have only assumed when enacting the provision that the Attorney General would act promptly after a court committed an incompetent defendant to its custody.

In *Donnelly*, 41 F. 4th at 1106, a defendant had been held in pre-hospitalization custody for more than eight months after the district court had issued its § 4241(d) commitment order. The Ninth Circuit had "little difficulty concluding that whatever the outer limit of § 4241(d), the length of Donnelly's confinement exceeds it." *Donnelly*, 41 F. 4th at 1106. "We do not think," it explained, that "*Jackson's* reasonable relation requirement permits a pre-hospitalization commitment period, whose purpose is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility, to last longer than the maximum time Congress permitted for the period of hospitalization itself." *Id.*

Following *Donnelly*, district courts from around the country have repeatedly found statutory and constitutional violations for extensive prehospitalization delay after a court issued the § 4241(d) order, including the following:

- *United States v. Christian Castrellon*, 22 Cr. 112 (GPG), Dkt. No. 68, at 5 (D. Col. May 12, 2023): "This court finds that a pre-hospitalization commitment period of six months and beyond is unreasonable;" *cf. United States v. Christian Castrellon*, 2023 WL 2330688 (D. Col. March 1. 2023);

- *United States v. Justin Mouton*, 2023 WL 3872206, at *2 (S. D. Tex. June 7, 2023): finding that a pre-hospitalization delay of around five months violated defendant's due process rights; *cf. United States v. Justin Mouton*, 20 Cr. 501, Dkt. No. 43 (S.D. Tex., Feb. 6, 2023);

- *United States v. Sergio Emerson*, 22 Cr. 96 (WCG), at 3 (E.D. Wis. Mar. 13, 2023): finding a violation of 18 U.S.C. § 4241(d) where defendant was not placed in a suitable facility within the four-month commitment period.

- *United States v. Sita Lotofhea Leusogi*, 2022 WL 16855426, at *1 (D. Utah Nov. 10, 2022): finding a violation after around four months of pre-hospitalization delay; *cf. United States v. Sita Lotofhea Leusogi*, 21 Cr. 32 (TS), Dkt. No. 93 (D. Utah Oct. 19, 2022).

Angel Almeida has been languishing for approximately five months since the Court issued the § 4241(d) Order requiring the government to promptly transfer them to a medical facility. The BOP does not even have a projected transfer or admission date, thereby only prolonging Angel's pre-hospitalization confinement. The now 5-month delay, which is

5

growing by the day, is unreasonable and violates 18 U.S.C. § 4241(d) and the Due Process Clause of the Fifth Amendment.

### C. The BOP's "waitlist" – the reason for the delay - does not excuse the violation.

The BOP's "waitlist" does not render the 5-month delay reasonable or constitutional: "The BOP's bureaucratic failure to allocate adequate resources to meet the demand for competency evaluations is not . . . a legitimate excuse for failing to comply with" § 4241(d)(1). *Donnelly*, 41 F. 4th at 1108-09 (Watford, J., concurring); *see also United States v. Robert Wazny*, 2022 WL 17363048, at * 6 (M.D. Pa. Dec. 1, 2022): ("[T]he factors suggested by the Government that should be considered, to wit, the bureaucratic, staffing, and space issues within the BOP . . . [are] of only limited significance when balanced against the due process and statutory rights of a criminal defendant."); *United States v. Subtain Raja*, 2023 WL 3497234 at * 5 (S.D. Indiana, May 17, 2023) ("the Court cannot excuse due process violations based on" constraints of available beds and personnel.)"; *Leusogi*, 2022 WL 16855426, at *3 ("The BOP has chosen to designate a small number of facilities as 'suitable facilities' and has failed to outfit them with the requisite staff, resources, and beds to handle the needs of those defendants requiring competency restoration."). As one district court explained, "to find that logistical hurdles excuse a due process violation would render the Due Process Clause meaningless." *Mouton*, 2023 WL 3872206, at *2.

### D. The appropriate remedy for this violation is for the Court to order the government to transfer Angel Almeida to a suitable facility within 15 days.

18 U.S.C. § 4241(d) does not "expressly provide a remedy for violations arising from the failure to comply with the Act's various provisions." *United States v. Angel Lara*, 2023 WL 3168646, at *6 (D. New Mexico April 28, 2023). Courts have routinely found, however, that they have the authority to redress the statutory and constitutional violations at issue here. *See Donnelly*, 41 F. 4th at 1107 ("the district court possesses supervisory authority to order the government to rectify violations of law with remedies shaped to redress the corresponding injury"); *see also Lara*, 2023 WL 3168646, at *6. The Supreme Court itself recognized that the due process constraints implicit in the predecessor statute of § 4241(d) required that a remedy be available: given the statute's implicit due process limitations, a defendant could be "held only for a 'reasonable period of time' necessary to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future. If the chances are slight, or if the defendant does not in fact improve, then he must be released or granted a §§4247-4248 hearing [the predecessor civil commitment provisions]."

Courts have identified two available remedies. First, most courts have given the government an opportunity to remediate the delay by promptly transferring defendants to a suitable facility. *See Donnelly*, 41 F. 4th at 1107 ("Ultimately, both Donnelly's liberty interest and Congress's directive to restore incompetent defendants where possible will be

6

best served by requiring the government to hospitalize Donnelly without further delay"). This remedy – while it does not erase the violation – at least is aimed at mitigating the harm, and is aligned with the statutory purpose of § 4241(d): to minimize the length of time a defendant is evaluated for competency restoration so that mentally incompetent defendants are not held indefinitely.

Courts have imposed various deadlines on the government to transfer a defendant to a medical facility, but in general the transfer period is between 7 and 45 days. *See Donnelly*, 41. F. 4th at 1107 (seven days); *Lara*, 2023 WL 3168646, at *7 (seven days); *Leusogi*, 21 Cr. 32, at 5-6 (seven days); *Emerson*, 22 Cr. 96, at 4 (15 days); *Raja*, 2023 WL 3497234, at *6 (30 days); *United States v. Hayward*, 22 Cr. 40, Dkt. No I, at 1 (30 days); *Wazny*, 2022 WL 1736048, at *7 (30 days); *Castrellon*, 2023 WL 2330688, at *4 (around 40 days); *Mouton*, 20 Cr. 501, at 2 (45 days). Where the Attorney General has not complied with such orders, however, courts have found that the only other available and appropriate remedy is dismissal of the charges. *See, e.g., Hayward*, 22 Cr. 40, Dkt. No. 57, at 6; *Leusogi*, 2022 WL 16855426, at *1; *Lara*, 21 Cr. 1930, at 4; *Castrellon*, 22 Cr. 112, at 8. While Courts recognize that dismissal is an extraordinary remedy, "[n]o lesser sanction will adequately address the wrongs to [defendant] or the Attorney General's deliberate failure to comply with my orders." *Hayward*, 22 Cr. 40, Dkt. 57 at 6; *see also Lara*, 21 Cr. 1930, at 4 ("Dismissal is a harsh outcome, and it is not a remedy that the Court considers lightly. But the United States has been afforded time to correct the existing constitutional violation, and the United States has been unable to do so. The only solution that remains is dismissal."); *cf. Donnelly*, 41 F. 4th at 1107 (ordering transfer within seven days, but noting that dismissal may be an option in the future, or may be an option for defendants "who are able to show that the government's unreasonable delay amounts to the kind of flagrant misconduct warranting dismissal.").

## Conclusion

The almost five-month delay in placing Angel in a suitable facility is inconsistent with 18 U.S.C. § 4241(d)(1) and this Court's May 20, 2024 Order. It also violates Angel's due process rights under the 5th Amendment. At this point, Angel has been held awaiting hospitalization for longer than the period Congress authorized for the entire length of a defendant's hospitalization. However, it is not only the length of the delay that triggers the instant constitutional violation. It is also Angel's conditions of confinement during the delay. The highly restrictive conditions within the SHU have undoubtedly exacerbated Angel's psychosis. With the government unable to provide any end in sight, the Court must intervene and pursuant to its supervisory authority, rectify the present and ongoing due process violation. Considering Angel's due process rights and liberty interests, along with Congress's directives outlined in § 4241, the Court should require the government to transfer Angel to a federal medical center within 15 days. Should the government fail to comply, the Court should order a hearing to determine whether the government's continued violation of Angel's due process rights warrants a dismissal of the indictment.

Respectfully submitted,

/s/

Anthony Cecutti, Esq.